UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NELIDA AGOSTO ORTIZ,  )
              Plaintiff  )
)
)
     v.  )     Civil Action No. 10-30009-MAP
)
)
MICHAEL J. ASTRUE,  )
Commissioner of Social  )
Security Administration,  )
              Defendant  )

REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO
AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 8 and 11)
January 10, 2011

NEIMAN, U.S.M.J.

      This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Nelida Agosto Ortiz ("Plaintiff") asserts that the Commissioner's decision denying her such benefits -- memorialized in an August 5, 2009 decision of an administrative law judge -- is in error. She has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

      The parties' motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court

will recommend that the Commissioner's motion to affirm be allowed and that Plaintiff's motion be denied.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

II. Background

Plaintiff, born in 1982, has a twelfth-grade education, received a certification for billing and medical coding in Puerto Rico, and worked for three years in a fast food restaurant. (Administrative Record ("A.R.") at 22-23, 85, 112, 386.) She stopped working in 2006 after injuring her back. (A.R. at 108.) Although Plaintiff suffers from a number of physical impairments, including back problems, obesity and asthma, the court will describe in detail only certain medical conditions that appear to undergird the two asserted impairments which form the basis of her present argument, migraine headaches and depression.

On January 10, 2008, Plaintiff was admitted to Bay State Medical Center for preeclampsia, a condition that may develop during pregnancy and which involves high blood pressure and protein in the urine. (See A.R. at 224-43.) During this admission, she delivered a non-viable (stillborn) infant. (See *id.*) Medical notes at the time indicate that Plaintiff also suffered from mild, intermittent asthma but was not then being treated. (See *id.*) Several days later, Plaintiff returned to the emergency room complaining of a headache. (A.R. at 219-23.) After a dose of morphine, she felt better and was discharged. (See *id.*)

From January through February of 2008, Plaintiff was treated at the Caring Health Center ("CHC"), received a prescription refill for a hypothyroid problem, was advised to take Prilosec for indigestion, and was referred to an endocrinologist. (A.R. at 188-91.) Plaintiff started seeing an endocrinologist at Western New England Renal and Transplant Associates for ongoing proteinuria (stemming from her preeclampsia) as well as anemia and poorly-controlled hypertension. (A.R. at 252-53, 292-300.) At a final

3

examination on November 17, 2008, Dr. Eileen Kehoe noted that Plaintiff had done "remarkably well" although she had mild proteinuria. (A.R. at 293-94.) Dr. Kehoe recommended that Plaintiff continue using lisinopril to control her blood pressure but advised that the medication would need to be changed if she followed through on plans to conceive another child. (A.R. at 252-53, 293-300.)

On August 14, 2008, Plaintiff had a consultation with Dr. Thabo Kenosi, an endocrinologist at Baystate Medical Center, who recommended an ultrasound and a thyroid function test. (A.R. at 350-52.) A cytopathology report dated January 16, 2009, showed a thyroid disorder (A.R. at 359-60), but in February 2009, Plaintiff's nephrology lab reports were normal without any proteinuria (A.R. at 317-18).

On April 2, 2009, Plaintiff was seen at CHC for a three-week history of intermittent migraine headaches, which lasted about two hours and were somewhat eased by Tylenol. (A.R. at 362.) A physician's assistant advised Plaintiff to rest, take ibuprofen and return if her headaches worsened or did not improve. (*Id.*)

As for Plaintiff's depression, she was seen at the Child and Family Service of Pioneer Valley, Inc. ("C&FS") for a mental health assessment on December 9, 2008. . (A.R. at 385-92.) Plaintiff complained of depression, sleep difficulty, and grief from the loss of her stillborn child approximately a year before. (*Id.*) A C&FS social worker, Vilma Rivera-Cotto, found Plaintiff's mood anxious, sad and depressed, but determined that her affect, judgment and insight were appropriate. (*Id.*) By March 17, 2009, Ms. Rivera-Cotto made an initial diagnosis of mild, recurrent, major depressive disorder, and bereavement, gave her a global assessment of functioning ("GAF") score of 61 at the time and as high as 69 in the prior years, and recommended counseling for seven to

twelve months. (See *id.*)[1]

Plaintiff filed her application for benefits on March 28, 2008, alleging that she had been disabled since June 15, 2006, due to hand pain as well as back and kidney problems; she did not mention migraine headaches or depression. (A.R. at 85-88, 108-110.) Plaintiff's claim was denied initially and on reconsideration (A.R. at 39-48, 53-58), whereupon she requested a hearing before an administrative law judge ("ALJ") which hearing was eventually held on May 22, 2009 (A.R. at 74-80). In a decision dated August 5, 2009, the ALJ found that Plaintiff was not disabled. (A.R. at 6-16.) The Decision Review Board did not complete its review within ninety days, thereby rendering the ALJ's decision final and subject to judicial review. (A.R. at 1-3.)

### III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to its expiration, is under a disability. *See* 42 U.S.C. § 423(a)(1)(A) and (D). Entitlement to SSI, on the other hand, requires a showing of both disability and financial need. *See* 42 U.S.C. § 1381a. Plaintiff's need, for purposes of SSI, and her insured status (until December 31, 2009), for purposes of SSDI, are not challenged.

A. <u>Disability Standard and the ALJ's Decision</u>

---

[1] "A GAF score represents 'the clinician's judgment of the individual's overall level of functioning.' The GAF score is taken from the GAF scale, which 'is to be rated with respect only to psychological, social, and occupational functioning.' The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Munson v. Barnhart*, 217 F. Supp. 2d 162, 164 n.2 (D. Me. 2002) (quoting DSM-IV-TR at 32, 34 (appendix)). *See also Walker v. Barnhart*, 2005 WL 2323169, at *4 n.3 (D. Mass. Aug. 23, 2005).

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). *See also* 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if [her] physical and mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If [s]he does not have an impairment of at least this degree of severity, [s]he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .

6

> Fourth . . . does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question 1); her "severe" impairments include low back pain due to herniations, a history of asthma, and obesity, but those impairments did not meet or medically equal one of the listed impairments in Appendix 1 (questions 2 and 3); she is prevented from performing her past relevant work (question 4), but is able to perform a significant number of jobs in the national economy (question 5). (A.R. at 11-16.) As a result, the ALJ concluded that Plaintiff was not eligible for SSDI or SSI benefits. (A.R. at 16.)

B.  Analysis of the Parties' Arguments

Plaintiff asserts two arguments in support of her motion for judgment on the pleadings, both of which concern the ALJ's "severity" findings at step 2 of the five-step protocol. First, Plaintiff asserts that the ALJ erred by not finding her migraine headaches severe. Second and similarly, Plaintiff asserts that the ALJ erred by not finding her depression severe either. In essence, Plaintiff contends that the ALJ, when making these findings, failed to apply the *de minimis* standard called for in *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1122 (1st Cir. 1986). As a result,

7

Plaintiff asserts, the ALJ's determination of her residual functional capacity was not fully supported by substantial evidence in the record. Plaintiff does not otherwise challenge the ALJ's findings.

For his part, the Commissioner argues that the ALJ correctly determined that Plaintiff does not suffer from severe migraines or severe depression -- neither of which were mentioned in Plaintiff's initial application -- and that, as a result, substantial evidence of record supported his determination of Plaintiff's residual functional capacity. For the reasons which follow, the court believes that the Commissioner has the stronger argument.

The First Circuit in *McDonald* indicated that question 2 is intended to screen out frivolous claims. *Id. See also Bowen*, 482 U.S. at 146. Still, the First Circuit explained, a claimant always has the burden of providing medical evidence demonstrating the severity of her condition. *McDonald*, 795 F.2d at 1122. *See also Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(2), 416.920(a)(4)(2). Thus, a claimant must show that an impairment has more than a minimal effect on her ability to do basic work activities. *See Munoz v. Sec'y of Health & Human Servs.*, 788 F.2d 822, 823 (1st Cir. 1986); 20 C.F.R. §§ 404.1520(c), 416,920(c); *Titles II and XVI: Medical Impairments that are not Severe*, Social Security Ruling ("SSR") 85-28.

With respect to the two impairments at issue here, Plaintiff briefly testified at the administrative hearing that she uses a pump for asthma, experiences headaches "about once a week," and takes Tylenol when she feels them coming on. She also testified that, while medication eases her depression, it also makes her sleepy. She stated as well that, although she sometimes feels "spent" during the day because of the side

8

affects of her medication, she does not nap. She also testified that she gets anxious at times and, at other times, finds it difficult to get out of bed in the morning. Finally, she testified that she was attending sessions with a therapist every two weeks and a psychiatrist every two months.[2]

Despite this testimony and other evidence in the record, Plaintiff, in the court's view, failed to adequately demonstrate to the ALJ that her migraine headaches and depression significantly affected her ability to perform basic work activities. The ALJ found that, while the record supported episodic complaints of migraines and depression, neither was established as ongoing sources of any significant work related limitations. The migraines, the ALJ found, were only occasionally mentioned in the context of regular treatments and medication typical for migraines were never prescribed. The ALJ also determined that the only treatment note regarding depression was coupled to an episode of bereavement. In the court's opinion, the ALJ's finding that these two particular conditions were not severe was grounded in substantial evidence.

As explained above, Plaintiff's visits to the hospital in January 2008 for headaches, as the Commissioner now makes clear, stemmed from a pregnancy-related condition known as preeclampsia, which caused high blood pressure and protein in the urine. Plaintiff was followed by an endocrinologist for several months, who reported that she was doing "remarkably well" and had no complaints. The only other medical report relating to headaches was the April 2, 2009 report from CHC; as noted, Plaintiff

---

[2] As the Commissioner points out, however, the record does not contain mental health treatment notes except for the ones dated December 8, 2008, and March 17, 2009. (See A.R. at 385-92.)

described the headaches then as "intermittent" and the physician's assistant diagnosed them as tension headaches for which he prescribed rest, relaxation and ibuprofen. Otherwise, Plaintiff's medical records from November of 2007 through February of 2009 do not show such complaints. (See A.R. at 252, 295, 297, 317, 322, 327, 332, 337, 341, 363, 365-71.) Moreover, as the ALJ noted, Plaintiff has not been prescribed any medications generally used in the treatment of migraines and simply used over-the-counter Tylenol, which provided her with mild relief.

Regarding depression, although the issue may be somewhat closer, the evidence also does not show that Plaintiff met her burden of proving that her depression was of such intensity as to significantly affect her ability to perform basic work activities. As noted, on December 9, 2008, Plaintiff sought treatment for depression that emerged about one year after the January 2008 stillbirth. She complained at the time of depression and difficulty falling asleep at night and was diagnosed by the clinical social worker with a mild, recurrent, major depressive disorder and bereavement. As the Commissioner points out, a major depressive episode is classified as "mild" when five or six depressive symptoms are present and there is either mild disability or there is the capacity to function normally with sustained or unusual effort. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 376 (4th ed. 1994). In addition, the clinician rated Plaintiff's GAF as 61 at the current time and as high as 68 in the past year. As the Commissioner notes, a GAF rating between 61 and 70 represents a person with some mild symptoms only. DSM-IV at 32.

Given the *de minimis* standard, the ALJ may well have been able to find that Plaintiff's depression was severe, but it would have made no difference in the final

analysis. The ALJ considered Plaintiff's depression, as well as those impairments he did find severe, when determining the extent of Plaintiff's limitations. Thus, the ALJ found that Plaintiff's psychological depression, although not severe, imposed certain limitations necessitating testimony from a vocational expert, testimony which would not have otherwise been required. In particular, the ALJ asked the vocational expert to assume that, among other ailments, the hypothetical individual suffered from depression, primarily based on bereavement, and that she could only perform "simple rote tasks." In response, the expert testified that such an individual could not engage in her prior work but could perform at least three jobs that he identified. Although the vocational expert also testified that all work would be eliminated for an individual who, among other ailments, suffered from "emotional consternation, could not complete a normal work day and who would miss at least two days a month of work, the evidence, as the Commissioner argues, did not show that Plaintiff's headaches or depression limited her to that degree.

Unfortunately for Plaintiff's cause, the medical evidence supports both the ALJ's finding with regard to her residual functional capacity and, in turn, the vocational expert's conclusion that Plaintiff could perform work available in significant numbers in the local and national economies. As a result, the court believes that the AlJ's decision is supported by substantial evidence and should be affirmed.

IV. CONCLUSION

For the reasons stated, the court recommends that Plaintiff's motion for judgment on the pleadings be DENIED and that the Commissioner's motion to affirm be

ALLOWED.[3]

DATED: January 10, 2011

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.